

100 N. Tampa St.
Suite 1900
Tampa, FL, 33602

Tel: 813.834.9191
Direct: 813.868.6650
svogt@tcb-law.com

June 1, 2022

U.S. Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY  10007

      Re:   Docket# 22-558
            *Palin v. The New York Times Company*

Dear Sir or Madam:

     Appellant, Sarah Palin, by counsel and pursuant to the Court's Initial Notice of Stay of Appeal dated March 25, 2022 [Doc. 13], hereby informs the Court that an Opinion and Order on Appellant's post-trial motions cited in FRAP 4(a)(4) was entered on May 31, 2022.  A copy of the Opinion and Order is attached.

      Respectfully submitted,

      TURKEL CUVA BARRIOS, P.A.

      Shane B. Vogt

cc:   Counsel of Record
      (via CM/ECF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SARAH PALIN, | |
| Plaintiff, | 17-cv-4853 (JSR) |
| -v- | OPINION AND ORDER |
| THE NEW YORK TIMES COMPANY and JAMES BENNET, | |
| Defendants. | |

JED S. RAKOFF, U.S.D.J.:

Now before the Court is plaintiff Sarah Palin's post-trial motion. She first seeks the Court's retroactive disqualification, arguing that various aspects of the Court's management of her libel trial suggest bias against her. In the alternative, she seeks either a new trial or reconsideration of the Court's prior ruling that entered final judgment in favor of defendants The New York Times Company and James Bennet based on their motion under Fed. R. Civ. P. 50 for judgment as a matter of law. Because Palin's instant motion is wholly lacking in merit, the Court denies it in full.

Whatever she may have claimed in her complaint and pre-trial submissions, Palin was unable to deliver at trial admissible evidence that remotely supported her claim that she was intentionally or recklessly defamed by the defendants. As the Court clearly explained at some length in its Rule 50 Opinion dated March 1, 2022, ECF 196

1

("Opinion" or "Op."),[1] which is re-adopted here by reference, Palin wholly failed to establish several essential elements of her claim. Among other things, in the end she offered <u>no</u> affirmative evidence that Bennet or others who worked on the Editorial that is the subject of her claim knew or suspected before publication that the Challenged Statements, which linked Palin's Crosshairs Map to the Arizona shootings of Representative Gabby Giffords and others, were false. Indeed, none of the sources or research upon which the Editorial Board relied to draft, revise, and publish the July 14, 2017 Editorial expressly denied Bennet's inference that Palin's Crosshairs Map had played a causal role in the Arizona shooting. And when cautionary information was brought to defendants' attention, the <u>Times</u> promptly retracted the Challenged Statements. No reasonable juror could therefore have found by clear and convincing evidence that Bennet and the <u>Times</u> published the Challenged Statements with actual malice.

Throughout Palin's motion, she renews complaints about trial procedures and evidentiary rulings, including some made after the trial was over. The passage of time has not rendered these complaints any less meritless. But it is also worth noting that during the trial itself, her counsel was afforded numerous opportunities to object to the rulings and procedures of which she now complains, to lay

---

[1] All capitalized terms here used refer to the definitions set forth in the Opinion, unless otherwise specified. Also, all internal quotation marks, alterations, omissions, emphases, and citations have been omitted from all cited sources.

additional foundation for evidence she now claims was wrongly excluded, and even, post-trial, to seek relief that would establish a factual basis for much of her current complaints -- but she totally failed to do so.

## I.   **Relevant Background**

The Court has previously set forth in the Opinion the procedural and factual background of this case, familiarity with which is here assumed. In brief summary, this case was tried for seven days before the Court and a jury, beginning February 3, 2022. After the close of evidence, the defendants moved under Fed. R. Civ. P. 50 for judgment as a matter of law. Oral argument proceeded over several days while the jury deliberated. The Court eventually determined on February 14, 2022, that it would grant defendants' Rule 50 motion because Palin had failed to present any affirmative evidence supporting the essential element of actual malice. However, as the Court had previewed, it declined to simply enter final judgment and dismiss the jury at that time. Rather, in accordance with prior suggestions from the Second Circuit, the Court explained that it would allow the jury to continue its deliberations and would enter the Rule 50 judgment post-verdict, pursuant to Rule 50(b), so that, if the Court of Appeals were to disagree with the Court's decision to enter judgment as a matter of law, it would have the option of reinstating the jury's verdict rather than remanding for retrial. Neither side objected to this procedure, either when the Court previewed this procedure before ruling, at the time it delivered its ruling in open court, or at any time thereafter

3

before the jury rendered its own verdict and judgment was entered. <u>See</u> Op. 35-36.

Ultimately, the jury returned a verdict for defendants on February 15, 2022, and the Court entered final judgment that afternoon on the basis of the Rule 50 motion and, independently, on the basis of the jury's verdict. ECF 171 (final judgment); ECF 173 (verdict). After the jury was excused, the Court, in accordance with its very longstanding practice, directed its law clerk to speak with the jurors about any suggestions they might have for future improvements. During this discussion, however, several of the jurors volunteered to the law clerk that they had previously become aware of the bottom line of the Court's preliminary statement on February 14 that it would dismiss the case as a matter of law under Rule 50, because, notwithstanding that they had assiduously adhered to the Court's instruction to avoid media coverage of the trial, they had involuntarily received "push notifications" on their smartphones that gave the "bottom line" of the Court's decision. ECF 172. Although the same jurors made a point of affirmatively volunteering to the law clerk that this limited knowledge had not affected their deliberations in the slightest, the Court, upon learning of this conversation, promptly disclosed it, in writing, to the parties and the public, on the morning of February 16, 2022. <u>Id.</u>[2]

---

[2] As the Court had repeatedly informed counsel, the Court was required to leave the courthouse promptly after the close of each trial day to attend to teaching responsibilities at Columbia Law School, and this was true on the day the jury rendered its verdict (February 15, 2022). In the few minutes available between the law clerk's return to chambers after speaking with the jurors and the

4

On February 23, 2022, the Court held a telephonic conference with counsel regarding Palin's indication in a letter dated February 22, 2022, that she would seek the following forms of relief through post-trial motion practice: (1) the Court's disqualification, pursuant to 28 U.S.C. § 455, retroactive to August 28, 2020; (2) authorization to interview members of the jury; (3) disclosure of any communications between the Court and the media during trial; (4) reconsideration of the Rule 50 decision; and (5) a new trial and to set aside the verdict, pursuant to Fed. R. Civ. P. 59 and 60. See ECF 194 at 2. The Court granted Palin leave to move for any of these forms of relief, and set a schedule for briefing the instant motion, noting that it intended to publish an Opinion on or before March 1, 2022, amplifying the findings of fact and conclusions of law upon which its Rule 50 judgment depended. Id. at 4.

While the February 23, 2022 conference was in all other respects a scheduling conference, the Court, in response to item 3 on plaintiff's list of proposed motions, affirmed that the Court had not communicated with any member of the media at any time during the trial. See id. at 2-3. The Court also explained that on the morning of February 16, 2022, after final judgment had already been entered and

_____

Court's departure for Columbia, the Court directed its law clerk to prepare the one-sentence final judgment, which was docketed later that afternoon. See ECF 171. The following morning, however, after the Court learned the details of its law clerk's post-verdict discussion with the jurors, it immediately began drafting the order disclosing the relevant facts, and that order was emailed to counsel and docketed as soon as possible.

the Court had begun drafting the order alerting the parties and the public what its law clerk had learned from the jurors, the Court received an "urgent" message from a Bloomberg reporter asking about the push notification issue. See id. at 3. As the Court explained, it returned the call and, recognizing that Bloomberg might publish its article online before the Court could docket its order, the Court, after confirming certain details with its law clerk, gave a short statement to the reporter so that, if the reporter's article was published online before the Court issued its own announcement, there would be no misunderstandings. The statement contained substantially the same information as the order, which was docketed and emailed to counsel less than an hour after the story was published. See ECF 198-4 (Bloomberg article).

On February 28, 2022, Palin filed a Notice of Motion indicating that she would move for all forms of relief previously listed other than disclosure of the Court's media contacts. See ECF 195. However, her actual motion, filed March 22, 2022, also dropped her request for jury interviews (item 2 on her original list). See generally ECF 198 ("Mot.").

Finally, on March 25, 2022, Palin filed a petition for a writ of mandamus in the U.S. Court of Appeals for the Second Circuit, asking for this Court to be prohibited from ruling on the post-trial motions, for a new trial, and for reassignment to a new district judge. See In re: Palin, No. 22-629 (2d Cir. Mar. 25, 2022) Doc. 3 at 10. But the Court of Appeals, stating that it would benefit from this Court's

rulings on Palin's post-trial motion, stayed consideration of the petition until after the instant decision was rendered. <u>See</u> ECF 200.

## II.  **Palin's Post-Trial Motion**

The Court now denies Palin's post-trial motion in full, for the reasons set forth below and, where relevant, for reasons explained in the Opinion issued on March 1, 2022 and incorporated here by reference.

### A. **Disqualification**

Palin first moves for the Court to disqualify itself, retroactive to August 28, 2020. Palin does not allege actual bias. Rather, she contends that "a disinterested observer fully informed of the events ... occurring before, during and after the trial of this action would entertain doubts about the Court's impartiality." Mot. 35.

Under 28 U.S.C. § 455, a federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," or "[w]here he has a personal bias or prejudice concerning a party." The proponent of a disqualification motion bears the burden of demonstrating the appearance of bias. <u>In re Int'l Bus. Machines Corp.</u>, 618 F.2d 923, 931 (2d Cir. 1980) ("<u>In re IBM</u>").

Palin made no pre-trial motion to disqualify this Court, and much of her current motion to disqualify the Court retroactively to months before trial simply reflects her unhappiness with some of the Court's rulings, both at and before trial. But the Second Circuit has repeatedly rejected the suggestion "that adverse rulings by a judge can <u>per se</u> create the appearance of bias under section 455(a)." <u>Id.</u> at 929. See also <u>Liteky v. United States</u>, 510 U.S. 540, 555 (1994)

7

("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.") Rather, "under section 455(a) the bias to be established must be extrajudicial and not based upon in-court rulings." As the Second Circuit has further explained, this rule is an essential bulwark of judicial independence: "A trial judge must be free to make rulings on the merits without the apprehension that if he makes a disproportionate number in favor of one litigant, he may have created the impression of bias. Judicial independence cannot be subservient to a statistical study of the calls he has made during the contest." In re IBM, 618 F.2d at 929.

In support of her extraordinary request for retroactive disqualification, Palin identifies several aspects of the Court's management of the trial process. These include the Court's 2017 decision to grant defendants' motion to dismiss (subsequently reversed on appeal), unspecified aspects of the Court's subsequent summary judgment rulings,[3] the scheduling of the trial, the Court's voir dire

---

[3] Palin's dispute with the Court's prior summary judgment rulings largely centers on the Court's decision that an amendment to New York's anti-SLAPP statute applies to this action. See Mot. 1. Palin notes that "[t]his conclusion was recently called into question" by a First Department case, Gottwald v. Sebert, 2022 WL 709757 (1st Dep't Mar. 10, 2022), but her motion offers no argument for why the Court's conclusion is wrong, let alone how this conclusion (made before the Gottwald decision was entered) demonstrates bias. See Mot. 12 n. 14. Moreover, as defendants point out, Gottwald appears to be an outlier. See Opp. 29 n. 9 ("[T]he overwhelming majority of courts to consider this question have agreed with this Court's reasoning and ruled that the 2020 amendments apply to pending actions." (collecting cases)). Furthermore, a single Appellate Division case would not require the Court to reverse its earlier application of New York law when the New

8

procedures and rulings during jury selection, certain evidentiary rulings during the trial, the timing of the Court's announcement of its Rule 50 decision, an answer to a jury note, and the Court's aforementioned decision to briefly respond to a reporter's request for comment after final judgment had been entered. See Mot. 35. It is indisputable that all but the last of these complaints "rest upon trial rulings or conduct," which, as explained above, cannot provide the basis for recusal under section 455. In re IBM, 618 F.2d at 929; see also Spiegel v. Schulmann, 604 F.3d 72, 83 (2d Cir. 2010); United States v. Wedd, 993 F.3d 104, 117-118 (2d Cir. 2021). Therefore, even though the opposition papers of the defendants well argue why each of these rulings was correct, see ECF 201 ("Opp.") at 41-45, the Court need not here wade through the details of these decisions. If Palin believes the Court erred in making them, she can address that on appeal.

Palin's only even arguably legally cognizable complaint concerns the Court's decision to provide a brief post-verdict comment to a Bloomberg reporter's "urgent" request. As detailed above, even that last complaint is without legal merit, let alone any evidence of bias. Palin grounds her argument in a partial (and misleading) quote from Canon 3(A)(6) of the Code of Conduct for United States Judges. In full, however, Canon 3(A)(6) states as follows:

---

York Court of Appeals has yet to weigh in. But, in any event, how any of this demonstrates bias is beyond comprehension.

> A judge should not make public comment on the merits of a matter pending or impending in any court. A judge should require similar restraint by court personnel subject to the judge's direction and control. The prohibition on public comment on the merits does not extend to public statements made in the course of the judge's official duties, to explanations of court procedures, or to scholarly presentations made for purposes of legal education.

The Court's comment to Bloomberg fully complied with Canon 3(A)(6).[4] The comment did not in any way address "the merits of [the] matter." It was rather an "explanation[] of court procedures," specifically made to prevent the reporter, and, by extension the public, from misunderstanding the procedures permitted by Rule 50. Such comments are expressly permitted by Canon 3(A)(6).

Even apart from the textual permission provided by Canon 3(A)(6), the substance of the Court's comment provides no basis for recusal. None of the recusal cases cited by Palin concerned a statement to the media remotely akin to the Court's very brief comment on the Rule 50 procedure; each involved either multiple public statements or a lengthy televised interview, and each involved judicial comments about the merits of pending cases. See Mot. 35-36; Opp. 46-48.

"Of course, not every media comment made by a judge is necessarily grounds for recusal." Ligon v. City of N.Y., 736 F.3d 118, 126 (2d Cir. 2013). Palin's briefing articulates no reason why "under the

---

[4] The Bloomberg article included the following quote: "'I'm disappointed that the jurors even got these messages, if they did,' Rakoff said in an interview, referring to the news notifications. 'I continue to think it [the announcement of the intended Rule 50 decision while the jury was deliberating] was the right way to handle things.'" ECF 198-4 at 2.

circumstances taken as a whole, [the Court's] impartiality may reasonably be called into question" by an objective, disinterested observer fully informed of the facts, id., either considering just the comment to Bloomberg or Palin's whole list of supposed errors.

Since "the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited." In re Aguinda, 241 F.3d 194, 201 (2d Cir. 2001). It is hard to see how Palin's recusal motion is anything but frivolous, and it is hereby denied.

### B. **New Trial**

Palin also seeks a new trial, relying on several supposed errors. Palin cites (1) the voir dire conducted during jury selection, which she argues was inadequate because the Court did not ask her counsel's proposed questions; (2) certain evidentiary rulings, including the Court's decisions to exclude certain articles published on the website of The Atlantic, evidence about Bennet's brother who serves in the U.S. Senate, and evidence about the Times's decision to eliminate the Public Editor position; (3) an allegedly inaccurate response to a jury question; and (4) the timing of the Court's announcement of its decision on the Rule 50 motion. In actuality, none of these was erroneous, let alone a basis for granting Palin a new trial.

Before discussing each of the items, it should be noted that three of Palin's four complaints about the trial -- the voir dire, the response to the jury's note, and the effect of the Rule 50 decision on continuing deliberations -- are irrelevant to the Court's decision

11

to grant judgment to defendants as a matter of law, which supersedes the jury's verdict. Put another way, the Court's dispositive Rule 50 ruling ultimately rests on Palin's total failure to adduce affirmative evidence of actual malice, the core element of her libel claim, not any aspect of how the jury was selected, instructed, or managed. Nevertheless, the Court will address all four asserted grounds for Palin's motion under Rules 59 and 60 seeking a new trial.

### 1. Jury Selection

The purpose of conducting voir dire of prospective jurors during jury selection is to ensure that a fair and impartial jury is efficiently empaneled. Predictably, counsel seek through their own suggested questions to assemble a jury that they perceive to be most favorable to their client's cause, whether or not that assemblage is fair. See United States v. Lawes, 292 F.3d 123, 128 (2d Cir. 2002). There is nothing inherently wrong with this, but the "federal courts have successfully resisted ... attempts" to allow counsel to use "voir dire as an opportunity for advocacy" by repeatedly affirming that the "questioning of potential jurors on voir dire is ... quintessentially a matter for the discretion of trial courts." Id. see also, e.g., United States v. Kyles, 40 F.3d 519, 524 (2d Cir. 1994) (The law is clear that "a trial judge has broad discretion whether to pose a defendant's requested voir dire questions.").

As relevant here, a party is only entitled to a new trial because her proposed questions were not asked when she can show that either:

> (i) [the] <u>voir dire</u> [was] so demonstrably brief and lacking in substance as to afford counsel too little information even to draw any conclusions about a potential juror's general outlook, experience, communication skills, intelligence, or life-style; (ii) a failure to inquire about, or warn against, a systematic or pervasive bias, including one that may be short-lived but existent at the time of trial, in the community that would have been cured by asking a question posed by a party; or (iii) [the] record viewed in its entirety suggest[s] a substantial possibility that a jury misunderstood its duty to weigh certain evidence fairly that would have been clarified by asking a requested <u>voir dire</u> question.

<u>Lawes</u>, 292 F.3d at 129. Under this standard, Palin identifies no deficiency in the <u>voir dire</u> conducted for this trial.

In its questioning of the panelists, the Court identified the parties, witnesses, and other relevant people, noting that they were likely known to many, and repeatedly asked the prospective jurors whether there was any reason that they could not be fair and impartial if selected. <u>See, e.g.</u>, Tr. 3-9, 21. In response, several prospective jurors indicated that they could not, and, after further questioning, the Court dismissed them for cause. The adequacy of this process is demonstrated by the fact that several prospective jurors identified themselves as predisposed against Palin and unable to fairly consider her claim, and they were dully excused by the Court. Palin's motion identifies no retained juror that she asserts should have been struck for cause.

Palin's principal complaint is that the Court did not ask where prospective jurors got their news, a question that was proposed by

counsel for both sides.[5] See Mot. 10. "[B]ut federal trial judges are
not required to ask every question that counsel -- even all counsel --
believes is appropriate." Lawes, 292 F.3d at 128. This case
illustrates why: as explained on the record, the Court was concerned
with preventing questions about prospective jurors' media habits from
leading to the exclusion of educated jurors well equipped to interpret
the evidence in this case. Palin's counsel has never meaningfully
explained why this question was necessary, or even relevant. Indeed,
one of the people ultimately empaneled disclosed that their partner
had previously worked at "Fox News Channel," where Palin was a paid
contributor. See Voir Dire Tr. 27-28. And considering the subject
matter and personalities at issue in this case, the Court was equally
concerned about not introducing any political charge to the
proceedings. Creating a dynamic in which, for example, readers of the
Times and viewers of Fox News were repeatedly struck before the other
members of the venire would, in the Court's view, have cast an
unacceptably partisan pall over the proceedings.

The Court accordingly reaffirms its confidence, both in the jury
selection process that it has developed over more than 300 jury trials

_____

[5] The motion suggests that questioning about news sources was
required to "figure out whether jurors subscribed to the Times (and
might be biased) or other news websites or apps through which they
were or could be exposed to extra-judicial information about the case."
Mot. 10. This is a red herring. If counsel were concerned at the outset
about the jury's exposure to digital media, the appropriate response
would have been to request further instructions on that issue. None
was requested.

and in the fair and impartial jury selected for this trial. The Court also feels obliged to note, as it did repeatedly during trial and in the Rule 50 Opinion, that it was obvious to any observer that the jury actually selected in this case -- highly intelligent, attentive, diligent, and focused -- was a model jury in every respect.

### 2. Evidentiary Rulings

Palin also argues that the Court improperly excluded evidence by granting certain motions in limine filed by the Times. Specifically, Palin disputes the Court's exclusion of (1) certain articles about the Arizona shooting published on a blog hosted on the website of The Atlantic magazine while Bennet served as editor in chief of the magazine, (2) evidence concerning the Times's elimination of the Public Editor position, (3) an article about the media's inaccurate coverage of the Arizona shooting that was emailed to Bennet in 2011, and (4) evidence concerning Bennet's brother, who was elected as a Democrat to serve as U.S. senator from Colorado. Mot. 10-11. She further suggests that these evidentiary rulings somehow violated the Second Circuit's mandate from the motion to dismiss appeal. Neither contention has any merit.

The Court need not rehash the details of each of these four disputes. In accordance with its usual practice, the Court declined to rule on most of defendants' motions in limine before the trial, instead waiting to see how the evidence developed before making its determinations about relevance, foundation, and prejudice. Each of these issues was subject to written briefing and extensive oral

argument. The record of those arguments already reflects why the Court determined that Palin had failed to establish an adequate foundation to justify admission of this evidence, see Fed. R. Evid. 104(b), particularly in light of the significant Rule 403 concerns about some proffered exhibits.

The Court's Rule 50 Opinion further amplified the Court's rulings on the two most significant rulings, concerning the Atlantic blog posts and the evidence regarding Bennet's brother. See Op. 53-54 nn. 31-32. And even after the Court excluded these disputed categories of evidence, the Court expressly noted that the rulings were subject to reconsideration. For example, despite the absence of an adequate foundation in the deposition excerpts proffered as support by plaintiff's counsel during argument, plaintiff's counsel was expressly offered the opportunity to conduct further voir dire of Bennet outside the presence of the jury to lay additional foundation for the introduction of the challenged evidence. See Tr. 508. But plaintiff's counsel chose not to avail themselves of this opportunity, see, e.g., Op. 53-54 n. 32, and her motion provides no reason to excuse that choice.

Palin also suggests (without supporting argument) that these evidentiary decisions were "in violation of the mandate" that the Second Circuit issued after reversing this Court's order granting defendants' motion to dismiss. Mot. 10. This contention is frivolous. The prior appeal in this case concerned only the allegations set forth in Palin's complaint and the procedures employed by the Court in

16

assessing the plausibility of inferences drawn therefrom. See ECF 65. The Second Circuit made no evidentiary rulings (or even suggestions about admissibility), and it expressly disclaimed any view of the merits of Palin's claim. There is no colorable argument that the Second Circuit's prior mandate established any specific requirements for this Court's evidentiary rulings at trial.

For the foregoing reasons, the Court continues to believe the challenged evidentiary rulings were wholly correct. But, in any event, Palin's counsel, having declined the Court's invitation to try to lay the foundation that they had failed to establish during discovery, can hardly complain, let alone argue that these evidentiary rulings justify a new trial.

### 3. Jury Note

Palin disputes the Court's response to a question posed by the jury on the morning of February 15, 2022. The Court and the parties agreed that the jury's note contained two questions about the element of actual malice as to falsity: (i) whether the jury was permitted to draw an inference from Bennet's answer to a question posed by defense counsel and (ii) whether such an inference could contribute to the plaintiff's proof. Palin renews her objection to the Court's response to the second question, which read:

> In response to your second inquiry, an answer given by Mr. Bennet and a reasonable inference drawn therefrom is not sufficient in itself to carry the plaintiff's burden of showing by clear and convincing evidence that there was a high probability that Mr. Bennet actually doubted the truth of a challenged statement prior to publication, but it can contribute to the other evidence brought forth by the plaintiff.

Tr. 1323. Specifically, Palin argues that the jury should not have been told that an inference arising from Bennet's testimony was "not sufficient in itself to carry the plaintiff's burden." She concedes that this is a correct statement of the law insofar as it concerns a negative inference drawn from Bennet's testimony. See Op. 44-45; see also Anderson v. Liberty Lobby, 477 U.S. 242, 256 (1986). However, she now contends that the Court's response "ignore[es] that the jury question could have been about a direct inference or conclusion to be drawn from Bennet's testimony, or even an admission of actual knowledge of falsity." Mot. 19 n. 24.

There is nothing to support these contentions. As previously explained in the Opinion, Bennet offered no testimony from which the jury could properly draw a direct inference of actual malice, so the question must necessarily have concerned a negative inference. Nor did plaintiff's counsel -- either at the time of the jury note or in their instant motion -- identify any piece of Bennet's testimony from which the jury could have drawn a sufficient direct inference to justify a different instruction. In light of this trial record, her legal dispute is thus wholly academic.

Further still, plaintiff's counsel effectively waived this argument at trial. During the approximately half-hour colloquy through which the Court's response was crafted, the Court asked counsel for all parties whether they wanted to ask the jury "What question and answer are you referring to?" Tr. 1317. Plaintiff's counsel's definitive position was "we do not need to know the question and answer

they're referring to." Tr. 1319. Considering that the argument over the response to the jury's second question concerned the proper role of a negative inference from the defendant's testimony, if plaintiff's counsel believed there was a piece of Bennet's testimony from which a sufficient direct inference might be drawn, they should have accepted the Court's offer to inquire what piece of testimony the jury was asking about.

In any event, a new trial is "not require[d] ... if the instructions, read as a whole, presented the issues to the jury in a fair and evenhanded manner." Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 153 (2d Cir. 2014). As Palin concedes, the Court's response should be read together with Instructions No. 5 (circumstantial evidence) and No. 13 (actual malice), see ECF 170, which together clearly and accurately state the relevant legal standard. But Palin's further argument -- that the response was inconsistent with those instructions -- is wrong. As the Court explained during argument, the response addresses a specific wrinkle of defamation case law concerning the interaction between negative inferences about actual malice drawn from the defendant's testimony and the clear and convincing evidence standard that applies to the actual malice element. See Tr. 1322. The combination of the response to the jury's note read with Instructions No. 5 and 13 correctly states the law regarding the evidentiary basis from which the jury could find by clear and convincing evidence that defendants had published with actual malice.

### 4. Effect of the Rule 50 Decision

Finally, Palin argues that a new trial is warranted because, after the jury had rendered its verdict, a few of the jurors volunteered to the Court's law clerk that on February 14, 2022, while still deliberating, these few jurors had seen push notifications on their smartphones conveying the bottom line of the Court's intention to grant the Rule 50 motion, that is, to dismiss the case as a matter of law at the end of the case. Palin now suggests, without citing a scintilla of evidence, that the jurors must have "received push notifications throughout the trial, ... including articles with headlines that disparaged Plaintiff and her trial testimony." Mot. 21. But this gross and wholly unsupported speculation aside, there are at least four very strong, independent reasons why Palin cannot get a new trial because a few jurors saw a headline about the Court's legal ruling pop up on their phones.

First, and most obviously, if the Court's ruling dismissing the case as a matter of law under Rule 50 is correct, this entire controversy is an irrelevant side-show.

Second, even if the Court of Appeals were to reverse the Court's Rule 50 ruling and so had to consider whether to give effect to the jury's verdict, Palin has effectively waived the argument that the verdict is "tainted" by dropping the prong of her motion asking for permission to interview members of the jury. As the Court informed the parties in its order of February 15, 2022, the few jurors who volunteered to the Court's law clerk that they had seen push

notifications of the Court's Rule 50 determination also volunteered, indeed were adamant, that this had not affected their verdict or deliberations in the slightest. <u>See</u> ECF 172. But since this was hearsay, plaintiff could have asked to interview the jurors themselves to get first-hand knowledge, and, indeed, plaintiff's counsel indicated that they intended to seek the Court's permission to interview the jurors so they could do just that. <u>See, e.g.</u>, ECF 195 ¶ 2.

Instead, plaintiff's counsel ultimately abandoned this request. While the plain inference is that they accepted as true what the jurors had told the law clerk, they try to justify their waiver by arguing that "Rule 606(b) prohibits the disclosure of the effect of anything on a juror's or another juror's vote." Mot. 24 (quoting <u>Bibbins v. Dalsheim</u>, 21 F.3d 13, 17 (2d Cir 1994)). This totally misstates the law. Rule 606(b) contains an express exception providing that a "juror may testify about whether ... extraneous prejudicial information was improperly brought to the jury's attention." Fed. R. Evid. 606(b)(2)(A). To be sure, <u>Bibbins</u> reaffirms the longstanding rule that "[e]ven when a juror attests to receiving information outside the record, the juror may not go on to testify about the effect of that information on the juror's mental processes or the jury's deliberations." 21 F.3d at 17. But plaintiff's counsel could have sought interviews to determine precisely how many jurors saw push notifications about the Court's Rule 50 decision, whether any jurors were exposed to other media coverage of the trial, and, most important,

"the degree, if any, to which that information was actually discussed or considered" by the jury, <u>United States v. Calbas</u>, 821 F.2d 887, 896-97 (2d Cir. 1987). These facts might have been relevant to the "objective test" for determining if Palin suffered from any of the prejudice she hypothesizes. <u>Bibbins</u>, 21 F.3d at 17. One can only presume that counsel's preference to argue from innuendo rather than evidence reflects the strategic judgment that juror interviews would likely not have strengthened their hand.

Third, as noted in the Opinion, Palin did not preserve her objection to the Court's Rule 50 procedure.[6] Palin failed to object to the Court's stated intention to announce its Rule 50 decision but not to dismiss the jury, not only when the Court announced its decision but also at any of the earlier sessions of argument when the Court proposed this approach.[7] <u>See</u> Op. 35. And, in her motion, Palin cites no authority holding that the Court acted improperly, either by deciding the Rule 50 motion or by announcing that decision once it had

---

[6] Palin now also contends that she need not have objected to the Court's decision to announce the Rule 50 decision because "[t]his waiver position was rejected in the Mandate" from the prior Second Circuit appeal. Mot. 23. This is totally without basis. Yes, the Second Circuit excused Palin's counsel's failure to object to the Court's unconventional procedure to conduct a brief evidentiary hearing on the motion to dismiss. <u>See</u> ECF 65 at 12 n. 24. But that cannot reasonably be read to excuse counsel from the obligation to preserve any and all other objections during the entire rest of the litigation.

[7] Palin maintains that the Court preserved her procedural objection in a comment made after it announced the Rule 50 decision. <u>See</u> Mot. 23. But she provides no argument for why this is so, and the Opinion already explains why this position is manifestly incorrect. <u>See</u> Op. 36 n. 21.

decided the issue but declining to then dismiss the jury.[8] Nor did Palin's counsel believe that any further instruction to the jury about avoiding media coverage after the Rule 50 decision was announced, though the Court nevertheless gave such an instruction at defendants' request. See Op. 36-37; Tr. 1307.

Fourth, the available information suggests that the jury did exactly as it was repeatedly instructed to do when it encountered coverage of the trial: turn away and focus on the evidence. "It is not an uncommon occurrence for a notorious trial held in Metropolitan New York to engender extensive publicity." United States v. Gaggi, 811 F.2d 47, 51 (2d Cir. 1987). Indeed, if the mere encountering during trial of media information about otherwise unknown events relevant to the trial were sufficient to taint a jury and require a new trial, our entire jury system would be cast in great jeopardy in any and every case that was the subject of significant media coverage.

Nor does Palin explain why there is a qualitative difference between exposure to media coverage in general and exposure to coverage that reflects the Court's view about legal issues in the case.[9] Jurors

---

[8] Indeed, the Court had employed a similar Rule 50 procedure at least once before, and that case was affirmed by the Second Circuit. See Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 282 (2d Cir. 1998).

[9] Indeed, a jury often learns of a judge's view of a case when, for example, a judge appoints an expert witness and expressly informs the jury that it is a court-appointed witness, see Fed. R. Evid. 706(d); **Error! Main Document Only.**when the judge dismisses certain of the plaintiff's claims before the start of (or during) jury deliberations and tells the jury that the claims have been dismissed, see, e.g., Gonzalez v. United States, 1989 WL 124069 at *1 (E.D.N.Y.

are not shy about furnishing their own opinions, nor easily cowed by contrary authority. Indeed, it was just such interference from judicial authority that led our Founding Fathers to enshrine the right to a jury in our Constitution. A new trial is thus only appropriate "if the juror's ability to perform her duty impartially has been adversely affected ... and [a party] has been substantially prejudiced as a result." United States v. Ganias, 755 F.3d 125, 132 (2d Cir. 2014), rev'd on other grounds on reh'g en banc, 824 F.3d 199 (2d Cir. 2016). In the Opinion, the Court discussed at length why it concluded that in this case the Court was "left with the definite conviction that the information did not remotely affect the ultimate verdict." Op. 66. The Court now reaffirms that conclusion.

In sum, Palin's arguments have established neither error nor prejudice, so they cannot justify granting a new trial. Accordingly, Palin's motion for a new trial is denied.

### C. Reconsideration of the Rule 50 Decision

Finally, Palin moves for reconsideration of the Court's decision to grant defendants' Rule 50 motion for judgment as a matter of law. Palin's motion discusses various pieces of evidence while making three basic arguments.

---

Oct. 6, 1989); or when, as used to be common and is still permitted, the judge marshals the evidence as part of its charge to the jury, see United States v. Mundy, 539 F.3d 154, 156-159 (2d Cir. 2008). **Error! Main Document Only.**Here, by contrast, the jury was expressly instructed that the Court's "rulings were no more than applications of the law" and that the Court had "no opinion as to the verdict you should render in this case." Tr. 1206.

First, Palin contends that the Court misapplied the Rule 50 standard by disregarding certain evidence, drawing inferences unfavorable to her claim, and "adopt[ing] Bennet's testimony as true." Mot. 24. This is simply untrue. The Opinion already addressed the full evidentiary record, and none of the arguments in Palin's motion undermines the Court's prior conclusions. Palin wrongly contends that the Opinion improperly "credited" Bennet's testimony on issues such as whether he opened the ABC News hyperlink in Williamson's draft, whether he meant his email to Williamson asking her to "please take a look" as a request for her to fact check his draft, and whether it is true that in 2017 he did not recall any reporting about the police investigation of the 2011 Arizona shooting. Mot. 16, 27. But at trial Palin provided no concrete, let alone material, evidence undermining Bennet's testimony on these points, and she identifies no authority supporting the proposition that the Rule 50 standard requires the Court to disbelieve uncontested testimony.

The fundamental shortcoming in her trial presentation remains apparent: nowhere does the motion identify any piece of research actually considered during the drafting process by Bennet or any other member of his team that states a fact about the Arizona shooting that would have falsified the Challenged Statements' inference of a causal link between the Crosshairs Map and Loughner's murderous rampage. Nor does the motion identify any testimony or contemporaneous communication suggesting that any member of the team knew or suspected that the asserted link had been disproven. And since Palin adduced no

affirmative evidence on these points, her claim fails as a matter of law. See Anderson, 477 U.S. at 256; Contemp. Mission, Inc. v. New York Times Co., 842 F.2d 612, 621-622 (2d Cir. 1988); Op. 43-45.

Palin's second and third arguments are premised on fundamental misunderstandings about the relationship between a motion for judgment as a matter of law advanced at the close of the evidence and the conclusions drawn at earlier points in this litigation.

Palin's second argument is that the Court violated the Second Circuit's mandate from her appeal of the order grating defendants' motion to dismiss, because the Court's interpretation of certain evidence at trial differed from the Second Circuit's assessment of various allegations made in the complaint. But this argument is illogical. The prior appeal considered only the complaint and drew all plausible inferences in Palin's favor therefrom. That appeal never considered any evidentiary record in this case, nor assessed Palin's claims in any posture other than as a motion to dismiss. It is fundamental that a "district court d[oes] not violate the mandate rule by addressing on remand an issue that was not decided by [the Second Circuit] in the original appeal." Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co., 762 F.3d 165, 175 (2d Cir. 2014). And the Second Circuit has squarely rejected the contention that its review of a claim on a motion to dismiss constrains the district court's analysis after the record has been developed in discovery (let alone limited to the evidence adduced at trial). Brown v. City of Syracuse, 673 F.3d 141, 148 (2d Cir. 2012); see also id. ("There is no inconsistency

between our statement of hypothetical circumstances in [the first appeal] about what could be possible based on the allegations in the complaint and the district court's subsequent determination of what [the plaintiff] would in fact be able to prove given the evidence and subsequently clarified state of the law.").

For instance, Palin argues that "the Opinion ... contradicts the Mandate ... by discounting the ABC News article hyperlink and rejecting Palin's argument that the presence of the hyperlink was circumstantial evidence of actual malice." Mot. 29. But what the Opinion actually holds is that the hyperlink to the ABC News article does not establish that Bennet published with actual malice since the uncontradicted testimony at trial was that he never clicked the link or read the article. Op. 49-50.[10] Palin suggests that the Opinion's reasoning was somehow foreclosed by the Second Circuit's holding that the Court erred by crediting Bennet's testimony at the 2017 plausibility hearing rather than drawing the inference most favorable to Palin from the complaint's allegations. ECF 65 at 18. But that was a procedural ruling that turned on pleading standards, not a substantive assessment of the ABC News article or the evidence concerning its use (or lack thereof)

---

[10] The Opinion further notes that even if Bennet had read the ABC News article, "it is not at all clear that it would establish that Bennet knew that there was no connection between the cross hairs map and Loughner's attack," since a "reasonable reader in Bennet's position would not necessarily understand the hedge contained in the tenth paragraph -- that within one day of the attack, no firm connection had yet been made been made between Loughner and the map -- as conclusive evidence that no such connection was later established by investigators." Op. 50 n. 28.

by Bennet and the <u>Times</u>. The Opinion therefore could not have violated the mandate rule, regardless of how it interpreted the evidence on that point. The same error infects the other instances in which Palin's motion invokes the mandate rule.

Finally, Palin suggests that the Rule 50 decision was erroneous because the Opinion's conclusions regarding particular pieces of evidence differed in certain respects from conclusions the Court drew on summary judgment. Palin provides no authority for the proposition that the Court is somehow precluded by its prior denial of summary judgment. Indeed, the Second Circuit has squarely rejected this argument, affirming a district court's grant of a Rule 50 motion for defendants where "at an earlier stage of the case the court had denied a motion by defendants for summary judgment. The denial of summary judgment is an interlocutory decision. All interlocutory orders remain subject to modification or adjustment prior to the entry of a final judgment adjudicating the claims to which they pertain." <u>Williams v. Cnty. of Westchester</u>, 171 F.3d 98, 102 (2d Cir. 1999) (citing Fed. R. Civ. P. 54(b)). Furthermore, even leaving aside the interlocutory nature of summary judgment, it is unremarkable that the Court might reach different conclusions, even as to the same piece of evidence, on a Rule 50 motion. The standard remains the same -- the Court must view the record in the light most favorable to the non-movant -- but the object of analysis has changed. On a Rule 50 motion, the Court must assess each document or piece of testimony in the context of the trial record, which differs from the summary judgment record for many

reasons, including evidentiary rulings by the Court, the strategic choices of counsel, and differences between witnesses' trial and deposition testimony.

Since Palin has identified neither legal nor factual errors with the Opinion, her motion for reconsideration of the Court's Rule 50 decision is denied.

## III.   Conclusion

The meritless accusations of impropriety in Palin's motion cannot substitute for what her trial presentation lacked: proof of actual malice. This requires, under both Supreme Court precedent and New York State statutory law, clear and convincing evidence that Bennet and the Times published "America's Lethal Politics" knowing that it was false or in reckless disregard of its falsity. See New York Times v. Sullivan, 376 U.S. 254, 280 (1964). And, as the Supreme Court has likewise held, this high standard cannot be satisfied simply by a negative inference drawn from discrediting Bennet's denials. See Anderson, 477 U.S. at 256. Here, Palin still cannot identify any affirmative evidence to support the essential element of actual malice. This absence is not a consequence of trial procedures, judicial bias, or adverse evidentiary rulings. It is, in the Court's view, a reflection of the facts of the case. To be sure, as the Court itself recognized even it is initial statement of its Rule 50 decision, the evidence showed that Bennet and the Times's Editorial Board made mistakes as they rushed to meet a print deadline, and that their editorial processes failed to catch those mistakes before publication.

See Tr. 1303-1304. But in a defamation case brought by a public figure like Sarah Palin, a mistake is not enough to win if it was not motivated by actual malice. And the striking thing about the trial here was that Palin, for all her earlier assertions, could not in the end introduce even a speck of such evidence.

Palin's motion is hereby denied in its entirety.

SO ORDERED.

New York, NY
May 31, 2022

_____
JED S. RAKOFF, U.S.D.J.