# No. 22-558

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

SARAH PALIN,

*Plaintiff-Appellant,*

v.

THE NEW YORK TIMES COMPANY, a New York
corporation, and JAMES BENNET,

*Defendants-Appellees.*

**On Appeal from the United States District Court
for the Southern District of New York
(Case No. 1:17-cv-04853-JSR, Hon. Jed S. Rakoff)**

**REPLY BRIEF OF PLAINTIFF-APPELLANT**

Kenneth G. Turkel (Co-Lead Counsel)
kturkel@tcb-law.com
Shane B. Vogt (Co-Lead Counsel)
svogt@tcb-law.com
TURKEL CUVA BARRIOS, P.A.
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Tel: (813) 834-9191
Fax: (813) 443-2193

*Counsel for Plaintiff-Appellant Sarah Palin*

i

# <u>TABLE OF CONTENTS</u>

**<u>PAGE</u>**

TABLE OF AUTHORITIES ................................................................. iv

INTRODUCTION ............................................................................. 1

ARGUMENT ................................................................................... 3

I.     Proof of Actual Malice Should Not Have Been Required ............................ 3

       A.     Palin Did Not Waive Her Challenge to the Applicability of the Actual Malice Standard .................................................... 4

       B.     Actual Malice Should Not Have Been Required Under New York Law ........................................................................ 5

II.     The District Court Incorrectly Granted Judgment Under Rule 50 ................ 6

       A.     The Evidence at Trial More than Sufficiently Established Actual Malice ...................................................................... 7

       B.     The Rule 50 Judgment Should Not Be Affirmed on Other Grounds ....................................................................... 10

             1.     Requiring Proof of Actual Malice as to Defamatory Meaning was Clearly Erroneous ................................ 10

             2.     The Challenged Statements are Libelous *Per Se* ..................... 12

       C.     The District Court Abused its Discretion in Excluding Significant Evidence of Actual Malice ............................. 16

III.    The Jury's Verdict Should Not Be Affirmed ............................ 21

       A.     The *Voir Dire* was Legally Sufficient and Failed to Ensure an Impartial Jury ................................................................. 21

       B.     The Mid-Deliberation Instruction was Erroneous ............................ 22

    C.      Numerous Other Grounds Also Required Reversal ........................... 25

IV.    Disqualification is Necessary and Appropriate ............................................ 25

CONCLUSION ......................................................................................................... 28

CERTIFICATE OF COMPLIANCE ..................................................................... 30

CERTIFICATE OF SERVICE .............................................................................. 31

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<small>CASES</small>

*Arilo v. Lively*, 474 F.3d 46 (2d Cir. 2007)..............................................  16

*Bibbins v. Dalsheim,* 21 F.3d 13 (2d Cir. 1994) ............................................  24, 25

*Bradenburg v. Ohio*, 395 U.S. 444 (1969)............................................  15

*Campbell v. Citizens for an Honest Government, Inc.*, 255 F.3d 560 (8th Cir. 2001) ............................................  20

*Celle v. Filipino Reporter*,  209 F.3d 163 (2d Cir. 2000) .........................  6, 17, 20

*Church of Scientology v. Behar*, 238 F.3d 168 (2d Cir. 2001) ............................  21

*Church of Scientology Intern. v. Time Warner, Inc.*, 903 F.Supp. 637 (S.D.N.Y. 1995)............................................  21

*Clemente v. Impasato*, 274 A.D.2d 771 (3d Dep't 2000) ....................................  14

*Curtis Pub. Co. v. Butts*, 388 U.S. 130 (1967) ....................................  3

*D'Amico v. Correctional Med. Care, Inc.*, 991 N.Y.S.2d 687, 120 A.D.3d 956 (2014)................................................  13

*Dalbec v. Gentleman's Companion, Inc.,* 828 F.2d 921 (2d Cir. 1987) ........................................  6, 17, 20, 23

*Darby v. New York Times Co.*, 2014 WL 818614 (Tex. Feb. 26, 2014) ........................................  16

*Delima v. Trinidad Corp.*, 302 F.2d 585 (2d Cir. 1962)....................................  23

*Dobbs v. Jackson Women's Health Organization,* 142 S. Ct. 2228 (2022) ................................................  3

*Dodds v. American Broadcasting Co.,* 145 F.3d 1053 (9th Cir. 1998) ........................................  11

*Dunlop-McCullen v. Rogers*, 2002 WL 1205029 (S.D.N.Y. Feb. 21, 2002) ........................................................................... 16

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ................................... 3

*Girden v. Sandals Intern.*, 262 F.3d 195 (2d Cir. 2001) ...................................... 23

*Goldwater v. Ginzburg*, 414 F.2d 324 (2d Cir. 1969) ................................... 17, 20

*Harris v. City of Seattle*, 152 Fed. Appx. 565 (9th Cir. 2005) ............................ 21

*Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657 (1989) .......................................................................... 6, 9, 20

*Herbert v. Lando*, 441 U.S. 153 (1979) ........................................................... 17, 23

*Holzapfel v. Town of Newburgh*, 145 F.3d 516 (2d Cir. 1998) ........................... 23

*Innomed Labs, LLC v. ALZA Corp.*, 368 F.3d 148 (2d Cir. 2004) ........................................................................................... 23

*In re Boston's Children First*, 244 F.3d 164 (1st Cir. 2001) ................................ 26

*Jewell v. NYP Holdings, Inc.*, 23 F.Supp.2d 348 (S.D.N.Y. 1998) ........................................................................................... 13, 15

*Kendall v. Daily News Publ'g Co.*, 716 F.3d 82 (3d Cir. 2013) ........................... 12

*Kipper v. NYP Holdings Co., Inc.*, 12 N.Y.3d 348 (2009) ................................... 21

*Laguerre v. Maurice*, 192 A.D.3d 44, 138 N.Y.S.3d 123 (2020) ......................... 13

*Lamborn v. Dittmer*, 726 F.Supp. 510 (S.D.N.Y. 1989) ...................................... 26

*Levine v. Lawrence*, 2005 WL 1412143 (E.D.N.Y. Jun. 15, 2005) ........................................................................................... 4

*Ligon v. City of New York*, 736 F.3d 118 (2d Cir. 2013) ...................................... 27

*Loeb v. New Times Communications Corp.*, 497 F.Supp. 85 (S.D.N.Y. 1980) ........................................................................... 1

*Lucking v. Maier*, 2003 WL 23018787 (S.D.N.Y. Dec. 23, 2003) ........................................................................................... 15

*Masson v. New Yorker Magazine, Inc.,* 832 F. Supp. 1350 (N.D. Cal 1993) ........................................................................................ 11

*Matherson v. Marchello*, 100 A.D.2d 233, 273 N.Y.S.2d 998 (1984) ................................................................................................ 13

*McKee v. Cosby*, 139 S.Ct. 675 (2019) .................................................. 3

*Milkovich v. Lorain Journal Co*., 497 U.S. 1 (1990) ............................. 3

*Monahan v. New York City Dep't of Corr.*, 214 F.3d 275 (2d Cir. 2000) ................................................................................................. 4

*Owen v. Thermatool Corp.*, 155 F.3d 137 (2d Cir. 1998) .................................. 23

*Palin v. The New York Times Company*, 940 F.3d 804 (2d Cir. 2019) ...................................................................................... 9, 18, 19, 20

*Pension Ben. Guar. Corp. v. R. A. Gray & Co.,* 467 US 717 (1984)................................................................................................ 6

*Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000)................................................................................................ 7

*Regina Metropolitan Co., LLC v. New York State Division of Housing and Community Renewal*, 35 N.Y.3d 332 (2020)..................... 5, 6

*Restivo v. Hessemann*, 846 F.3d 547 (2d Cir. 2017) ................................... 16, 23

*Rinaldi v. Holt, Rinehart & Winston, Inc*., 42 N.Y.2d 369, 397 N.Y.S.2d 943, 366 N.E.2d 1299 (1977) ...................................... 13

*Rosenblatt v. Baer*, 383 U.S. 75 (1966) ................................................. 3

*Shade v. Hous. Auth. of New Haven*, 251 F.3d 307 (2d Cir. 2001) ...................... 24

*Sharon v. Time, Inc.*, 599 F.Supp. 538 (S.D.N.Y. 1984)...................... 17

*Sindi v. El-Moslimany*, 896 F.3d 1 (1st Cir. 2018) ............................... 21

*St. Amant v. Thompson*, 390 U.S. 727 (1968)........................................ 6

*State v. Brahy*, 22 Ariz.App. 524, 529 P.2d 236 (1974)....................... 15

vi

*Stepanov v. Dow Jones & Co., Inc.*, 987 N.Y.S.2d 37 (2014)............................. 12

*Time, Inc. v. Hill*, 385 U.S. 374 (1967)...................................................... 3

*Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006)........................................................................... 25

*U.S. v. Amico*, 486 F.3d 764 (2d Cir. 2007)................................... 25, 26

*U.S. v. Chichakli*, 2014 WL 5369424 (S.D.N.Y. Oct. 16, 2014) ........................ 20

*U.S. v. Ferguson*, 550 F.Supp. 1256 (S.D.N.Y. 1982) ........................................ 26

*U.S. v. Kahaner*, 204 F.Supp. 921 (S.D.N.Y. 1962)............................................ 22

*U.S. v. Korab*, 893 F.2d 212 (9th Cir. 1989) ........................................... 16

*U.S. v. Kozeny*, 667 F.3d 122 (2d Cir. 2011) ................................................ 22, 23

*U.S. v. Lawes*, 292 F.3d 123 (2d Cir. 2002)........................................... 21

*U.S. v. Loughner*, 2011 WL 754416 (D. Ariz. Mar. 3, 2011)............................. 15

*U.S. v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001)................................... 26

*U.S. v. Tsarnev,* 142 S. Ct. 1024 (2022) ............................................... 22

*U.S. v. White*, 698 F.3d 1005, 1016 (7th Cir. 2012) ........................................... 16

*Village of Freeport v. Barrella*, 814 F.3d 594 (2d Cir. 2016) ............................ 16

*Yimouyannis v. Consumer Union of the U.S., Inc*., 619 F.2d 932, (2d Cir. 1980)................................................................ 1

*Young v. Gannett Satellite Info. Network, Inc*., 734 F.3d 544 (6th Cir. 2013) ...................................................................... 9

*Zhang Jingrong v. Chinese Anti-Cult World Alliance*, 314 F.Supp.3d 420 (E.D.N.Y. 2018) ....................................... 4

**Page(s)**

**OTHER AUTHORITES**

Fed. R. Evid. 606(b) ................................................................. 24

*New York Pattern Jury Instructions, Civil* 3:24 ("Slander
    *Per Se*") ......................................................................... 13

Awareness of Meaning In Libel Law: An Interdisciplinary
    Communication & Law Critique, C. Clavert, 16 N. Ill.
    U. L. Rev. 111, 111-112 (1996) ................................................ 10

## **INTRODUCTION**

This case and Defendants' arguments clearly illustrate why the actual malice rule was ill-conceived and should no longer be applied. In practice, the rule leads judges to prematurely adjudicate cases against defamation plaintiffs based on the supposed need to prevent the "chilling" of free speech.[1] At best, the rule's amorphous standard—a judicially manufactured requirement of proving a publisher's subjective intent by clear and convincing evidence—effectively gives judges free rein to dismiss any "public figure" defamation case by discounting circumstantial evidence. At worst, it enables defendants to ensure their own immunity by claiming ignorance of the dictionary definitions of words (like "incitement," "clear," and "direct") and known and obvious facts without allowing the credibility of such contrived obliviousness to be decided by a jury or overcome through circumstantial evidence. [2]

---

[1] The District Court decided this case based on its "duty" to ensure that public figure libel actions do not chill free speech [JA2008], even though this violates controlling precedent holding that "it is no longer permissible to take into account the 'chilling effect' a libel suit may have on the exercise of first amendment rights. *Loeb v. New Times Communications Corp*., 497 F.Supp. 85, 94 (S.D.N.Y. 1980) (*citing Yimouyannis v. Consumer Union of the U.S., Inc*., 619 F.2d 932, 940 (2d Cir. 1980)).

[2] Ultimately, the rule has subverted the truth and caused significant harm to the "marketplace of ideas" because it has made publishers virtually impervious to liability and encourages them to feign ignorance, resulting in the proliferation of false information and making it virtually impossible for libel victims to get a fair shot at exercising the fundamental right to protect their reputations. It would be naïve to ignore the reality that journalists are well-trained and being counseled by industry organizations and their own lawyers concerning the implications of the

1

Unfortunately, Palin was never on a level playing field in this case and when it appeared as if she might nevertheless prevail at trial, the District Court took matters into its own hands, tipping the scales further in Defendants' favor to ensure their victory under the auspices of miscomprehended requirements of an antiquated rule that should never have been applied in the first place.

---

actual malice rule and are therefore well-aware of the fact that the rule's subjective standard allows them to escape liability by denying knowledge of the falsity of a statement they published.

**ARGUMENT**

## I.   PROOF OF ACTUAL MALICE SHOULD NOT HAVE BEEN REQUIRED

The actual malice rule should never have been imposed on Palin.  This judicially created, policy-driven[3] obstacle to vindicating reputational harm is a "substantial abridgment" of the fundamental constitutional right to protect one's reputation.[4] *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342-343 (1974).

Although the Supreme Court counseled against the "blind application" of the rule,[5] and its justifications indisputably have ceased to exist,[6] its unreasoning application persists while undermining human dignity, harming free expression, encouraging the proliferation of false information, and shielding the enormously powerful fourth estate from legal responsibility for its actions.

---

[3] *McKee v. Cosby*, 139 S.Ct. 675, 676 (2019) (Thomas, C., concurring).
[4] Defendants do not dispute that Palin holds a fundamental right to protect her reputation.  *See* Palin's Br. at 29-30 [*citing Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 22 (1990) ("a concept at the root of any decent system of ordered liberty") (quoting *Rosenblatt v. Baer*, 383 U.S. 75, 86 and 92-93 (1966)); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341 (1974); *Dobbs v. Jackson Women's Health Organization,* 142 S. Ct. 2228, 2246 (2022) (defining a fundamental constitutional right)]; Defendants' Br. at 19-20.
[5] *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 148 (1967) (citing *Time, Inc. v. Hill*, 385 U.S. 374, 390 (1967)).
[6] Defendants do not dispute the impacts of the Internet on the marketplace of ideas, importance of the protection of reputation, or that "an action for damages is the only hope for vindication or redress the law gives to a man whose reputation has been falsely dishonored."  *See* Palin Br. at 30-35; Defendants' Br. at 19-20.

### A.  Palin Did Not Waive Her Challenge to the Applicability of the Actual Malice Standard

Palin did not waive her right to contest the actual malice rule at the dismissal stage.  Defendants' waiver argument fails to cite to any rule or case supporting the proposition that a waiver occurred. [7]  Accordingly, it should be rejected.

Moreover, Palin's challenge to the actual malice rule also raises a constitutional question surrounding the standard of fault that should be applied to her claim, which can be raised at any time (and specifically for the first time on summary judgment, which is precisely happened here).  *See e.g. Zhang Jingrong v. Chinese Anti-Cult World Alliance*, 314 F.Supp.3d 420, 428-429 (E.D.N.Y. 2018) (citing *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000).

---

[7] Although there is a body of law holding that a plaintiff who fails to raise an argument in opposition to a motion to dismiss waives it at the dismissal stage and cannot resurrect that unasserted argument in an ensuing appeal if dismissal is granted, that rule does not preclude a plaintiff from contesting the requirement of proof of certain elements of her claim at later stages of the case if dismissal is denied. *See e.g. Levine v. Lawrence*, 2005 WL 1412143, *5 (E.D.N.Y. Jun. 15, 2005). Unlike defendants, who under Rules 8 and 12 expressly waive affirmative defenses they fail to assert in an answer or responsive motion, plaintiffs have no corresponding obligation and replies to affirmative defenses are not allowed under Rule 7 of the Federal Rules of Civil Procedure.  After the appeal, Defendants pleaded several affirmative defenses asserting the actual malice rule [Doc. 75 at p. 20 (Seventh, Eighth, and Ninth Affirmative Defenses)].  Presumably, Defendants' pleading of these defenses reopened the door for Gov. Palin to dispute the applicability of the actual malice rule, even if (assuming *arguendo*) that door had once been closed.

4

**B.** **Actual Malice Should Not Have Been Required Under New York Law**

The District Court's decision to retroactively apply New York's amended Anti-SLAPP statute was clearly erroneous. As noted by Defendants [Def. Br. at 21-23], the issue of whether the actual malice requirement in Section 76-a applies retroactively has not been decided by New York's highest court. However, the controlling law on statutory construction demonstrates that the amendments to Section 76-a are not "remedial" and do not apply retroactively.

Defendants' do not cite any legislative intent indicating that the changes to Section 76-a qualify as or were intended to be remedial in nature. To the contrary, in the District Court they conceded that the changes to Section 76-a impact "substantive burdens and rights" and constitute a "change in substantive law" [*See* Doc. 120 at p. 4 and n. 4], and whereas Section 70-a(1) specifically states that it applies to "any person who commenced *or continued* such action" (emphasis added), Section 76-a contains no such expression. As explained in *Regina Metropolitan Co., LLC v. New York State Division of Housing and Community Renewal*, 35 N.Y.3d 332, 373-374 (2020), this indicates retroactive application was not intended. *Id*. at 373-74.

New York's legislature did not include any unequivocal textual expression that Section 76-a was intended to apply to past conduct, nor an express prescription of the statute's temporal reach. *Id*. at 373. If retroactive application was intended,

5

the same type of language ("or continued") used in Section 70-a would be included in Section 76-a.  It was not.[8]

## II.  THE DISTRICT COURT INCORRECTLY GRANTED JUDGMENT UNDER RULE 50

Defendants' effort to justify the District Court's Rule 50 decision flies directly in the face of the well-established law holding that a defendant cannot "automatically ensure a favorable verdict by testifying he [or she] published with a belief the statements were true" and "a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence" and all reasonable inferences to be derives therefrom.  *Celle v. Filipino Reporter*, 209 F.3d 163, 190 (2d Cir. 2000) (citing *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968); *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989); *Dalbec v. Gentleman's Companion, Inc.,* 828 F.2d 921, 927 (2d Cir. 1987)).  They also Defendants' argument, "disregard[] critical evidence favorable to petitioner…fail[] to draw all reasonable inferences in favor of petitioner…discredit[] petitioner's evidence… [and]… impermissibly substitute[] [their] judgment concerning the weight of the evidence

---

[8] Even if the amendments to Section 76-a could arguably be said to apply retroactively, that would raise a bevy of constitutional issues Defendants completely fail to address.  As noted in *Regina*, "[b]ecause '[r]etroactive legislation presents problems of unfairness that are more serious than those posed by prospective legislation' *Romein*, 503 US at 191, 'the justifications for [prospective legislation] may not suffice for the [retroactive aspects].'" *Id.* at 374 (*citing Pension Ben. Guar. Corp. v. R. A. Gray & Co.*, 467 US 717, 730 (1984)).

for the jury's."  *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 152-153 (2000).

**A.    The Evidence at Trial More than Sufficiently Established Actual Malice**

Defendants (like the District Court) persist in advancing a slanted view of the facts and ignoring a significant amount of circumstantial evidence demonstrating Bennet's knowledge of falsity and reckless disregard for the truth.  They fail to address a majority of the circumstantial evidence and reasonable inferences addressed in Palin's Brief (at pp. 39-51).  Instead, they attempt to summarily discount this mountain of circumstantial evidence by citing case law concerning "a complete absence of evidence supporting the verdict" and "bare assertions" that publishers were not believable [see Defendants' Br. at pp. 26]—which is completely unavailing because it simply ignores the evidence.  This is **not** a case where the plaintiff was merely "asking the jury to decline to believe the denials" and failed to offer "concrete evidence from which a reasonable juror could return a verdict in [her] favor."  See Defendants' Br. at p. 27.  Ultimately [and contrary to law], Defendants' argument about the correctness of the Rule 50 decision is nothing more than their spin on select facts presented to the jury.

Defendants attempt to explain away Bennet's glaring admission of actual knowledge of falsity ("I didn't think then and don't think now the map caused Jared Loughner to act" [A806 at 721:5-6]) by claiming it was taken out of context [Def.

7

Br. at 29-30]. This argument is fruitless. Context does not change the fact that Bennet admitted knowing the map did not cause Loughner to act. Moreover, Defendants' contention that "whether the map actually caused Loughner to act did not enter [Bennet's] mind" contradicts Bennet's testimony that he requested prior editorials "connecting…the Giffords shooting to some kind of incitement," and even responded "good for us" when learning there were none.[9]

Defendants persistence in advancing the one-sided view of the research circulated during the drafting process and suggesting this research does not matter [Def. Br. at 31-32] fails to account for its legal implications.[10] In addition to demonstrating that Bennet knew his assertion of a **"clear"** and **"direct"** link between the map and incitement was false, the research indisputably called Bennet's preconceived narrative into doubt. As the District Court itself found at summary judgment, "where [a] publisher undertakes to investigate the accuracy of a story and learns facts casting doubt on the information contained therein, it may not ignore

---

[9] On summary judgment, the Court concluded that "a reasonable jury could infer from this ["good for us"] response that Bennet felt free to advance his narrative because the Editorial Board had not written on the subject." [JA1363]

[10] Defendants' Brief fails to refute the importance of the impeachment evidence at trial and Bennet changing his testimony about reading this research. After denying reading the research twice under oath, Bennet admitted reading the research at trial when faced with the email he wrote forwarding "*Bloodshed and Invective*" and "*As We Mourn*" to Semple and describing them as "more relevant precedent" to the Editorial. [JA718-19 at 634:9-635:3; JA1715-16]

8

those doubts, even though it had no duty to investigate in the first place." [JA1357][11]

This Court recognized the same controlling law in the Mandate. *Palin v. The New York Times Company*, 940 F.3d 804, 814 (2d Cir. 2019) (discussing Bennet's failure to "reacquaint[] himself with the articles published in *The Atlantic*.").[12]

Defendants' arguments about the ABC News article hyperlink contradict the same well-established law. *Palin*, 940 F.3d at 815. Moreover, Defendants' ignore the fact that the evidence established that Bennet was responsible for fact-checking the portion of the Editorial he rewrote [JA178 at 92:9-13] and fact-checking requires clicking on hyperlinks ("you open every link") to confirm they support the facts [JA481 at 398:5-20; JA504-505421:2-422:5].[13] Certainly, someone in Bennet's position would be familiar with and follow such elementary fact-checking policies.

---

[11] The District Court also concluded that: "After receiving Williamson's draft, a reasonable jury might conclude, Bennet had obvious reasons to doubt whether there existed a link between the map and the Loughner shooting… [and his] failure to further investigate or at least just click on the link to the only article Williamson had presented could support the inference that he was purposefully avoiding the truth." [JA1995]

[12] Plaintiff cited another case during the Rule 50 argument illustrating this same proposition. *Young v. Gannett Satellite Info. Network, Inc.*, 734 F.3d 544, 548 (6th Cir. 2013) (*citing Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989)). In *Young*, the court found recklessness based on a failure to investigate further where initial research "found no definitive statement" to support an accusation, and the failure to conduct additional research indicates a "deliberate decision not to acquire knowledge of facts that might confirm the probable falsity" of the accusation." *Young*, 734 F.3d at 548.

[13] Defendants similarly ignore Williamson's testimony confirming that Bennet's email on the evening of June 14, 2017 did not "specifically ask [her] to fact-check

**B.** **The Rule 50 Judgment Should Not be Affirmed on Other Grounds**

The District Court's Rule 50 Decision should not be affirmed based on Defendants' arguments concerning actual malice as to defamatory meaning or proof of special damages.

### 1. *Requiring Proof of Actual Malice as to Defamatory Meaning was Clearly Erroneous*

The Supreme Court, this Circuit, and New York courts have never held proof of actual malice as to defamatory meaning to be a required element of a plaintiff's defamation claim. [14] Defendants' argument is based on non-binding case law involving defamation by implication—not statements which, like Bennet's, on their face directly and explicitly convey a meaning that is defamatory *per se*. As the District Court noted, "What [the Editorial is] asserting is not that people at the time thought this, it's asserting as a fact that there's a direct link between this and the shooting." [See 7/31/2017 Hr'g Tran. at 11:12-14]

---

anything in the draft that he changed" [JA238-239 at 157:25-158:3] and that once she submitted her draft of the Editorial her work was done [JA219 at 138:9-12].

[14] One commentator aptly described this as "a new, constitutionally mandated fault element" that has been advanced by "legal scholars, libel defense attorneys, and a number of federal courts to again alter the constitutional landscape of libel law" by "add[ing] further protection—protection beyond the actual malice standard and procedural requirements—to the constitutional shields that now guard defendants in civil libel actions." *See* Awareness of Meaning In Libel Law: An Interdisciplinary Communication & Law Critique, C. Clavert, 16 N. Ill. U. L. Rev. 111, 111-112 (1996).

Defendants cite *Dodds v. American Broadcasting Co.,* 145 F.3d 1053, 1063 (9th Cir. 1998), for the proposition that a defendant must have intended to convey a defamatory impression. *See id.* at 1064. But this case is not one dealing with "impressions." Moreover, *Dodds* is a case where there was <u>no</u> evidence the publishers intended to convey the defamatory impression. *Id.* That cannot be said here. More importantly, *Dodds* clarifies that a defendant's intent to convey a defamatory impression is a unique attribute of defamation by implication cases and its analysis regarding intent is consumed within the opinion's discussion of defamation by implication. Critically, however, there were some statements in *Dodds* that were actionable on their face. And for those statements, the *Dodds* court engaged only in the traditional actual malice analysis—i.e. did defendants publish the challenged statements with knowledge of their falsity or with reckless disregard for their truth or falsity. *See id.* at 1061-1063.

*Masson v. New Yorker Magazine, Inc.,* 832 F. Supp. 1350, 1361-63 (N.D. Cal 1993), is far afield from the facts presented here because it involved a plaintiff claiming he was defamed by being misquoted. The portion of the case upon which Defendants rely concerned a jury instruction that added the defendant's awareness of the defamatory meaning as an element of the claim that the district court realized was breaking new ground. In doing so, the court even noted that "in the case at hand… the defamation is somewhat ambiguous and indirect." *Id.* at 1363.

11

Simply stated, Defendants cannot use non-binding defamation by implication cases to superimpose a new, additional actual malice element on Palin's claim. By nature, defamation by implication cases involve an additional "communicative intent" element because the statements at issue on their face are not defamatory. *Kendall v. Daily News Publ'g Co.*, 716 F.3d 82, 90 (3d Cir. 2013). Under New York law, defamation by implication "is premised not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements." *Stepanov v. Dow Jones & Co., Inc.*, 987 N.Y.S.2d 37, 43 (2014). In cases such as this one, the words at issue are facially defamatory and explicitly false.

Even is this Court decides to adopt the new element Defendants request, there is more than sufficient evidence upon which a jury could reasonably conclude Bennet was aware of the defamatory meaning apparent on the face of the statements he wrote about Palin. Notably, the District Court denied Defendants' Rule 50 motion as to defamatory meaning [JA 1300-1301] and Bennet admitted at trial that he knew readers would understand the word "incitement" by its dictionary definition. [JA 682 at 598:17-20]]

## 2. *The Challenged Statements Are Libelous Per Se*

Defendants' arguments concerning Palin's failure to prove special damages are entirely misplaced because (as the District Court determined), this case involves libel, not slander, and "the rules governing slander differ from those governing libel

since libel on its face is actionable without proof of special harm." See *New York Pattern Jury Instructions, Civil* 3:24 ("Slander *Per Se*"); *see also, Matherson v. Marchello*, 100 A.D.2d 233, 235-238, 273 N.Y.S.2d 998 (1984), *abrogated on other grounds*; *Laguerre v. Maurice*, 192 A.D.3d 44, 138 N.Y.S.3d 123 (2020).

It is well-established that defamatory written statements are **libelous** *per se* where they tend to subject the plaintiff to "hatred, distrust, ridicule or disgrace" or "induce an evil opinion of her in the minds of right-thinking persons." *Matherson*, 100 A.D.2d at 235-238; *Jewell v. NYP Holdings, Inc.*, 23 F.Supp.2d 348, 396-401 (S.D.N.Y. 1998); *D'Amico v. Correctional Med. Care, Inc.*, 991 N.Y.S.2d 687, 694, 120 A.D.3d 956, 962 (2014). As stated in *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 379, 397 N.Y.S.2d 943, 949, 366 N.E.2d 1299, 1305 (1977) (emphasis added):

> **_Any written or printed article_** is libelous or actionable without alleging special damages if it tends to expose the plaintiff to public contempt, ridicule, aversion, or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.

The publication at issue here is written and tended to subject Palin to "hatred, distrust, ridicule and/or disgrace." Notably, Defendants do not argue that the challenged statements fail to satisfy the controlling standard for **libel**, which is actionable without the need to allege or prove special harm. In fact, they completely ignore the "hatred," "ridicule," or "disgrace" standard.

13

Defendants falsely asserted under the title "*Lethal Politics*" that Palin was part of a "sickeningly familiar pattern" of violence consisting of James Hodgkinson's shooting in Virginia (characterized as a "form of terror" and "savagery" on a "killing field") and "incited" Jared Loughner to "open fire in a supermarket parking lot, grievously wounding Representative Gabby Giffords and killing six people, including a 9-year-old-girl,"  There is no legitimate argument that assertions such as these did not tend to subject Palin to hatred, ridicule or disgrace or induce an evil opinion of her in the minds of reasonable people.

Even though Plaintiff's ***libel*** claim is actionable without proof of special harm ("*per se*"), the challenged statements nonetheless satisfy the "slander *per se*" standards.  Defendants' arguments to the contrary are unavailing.

Asserting that Palin "incited" Loughner to "open fire in a supermarket parking lot, grievously wounding Representative Gabby Giffords and killing six people, including a 9-year-old-girl," and that this "political incitement" of Loughner's crimes was clear and directly linked to the "Giffords attack," clearly qualifies as a direct "attack on [Palin's] professional ability" and imputes unfitness in the performance of her profession.  *Clemente v. Impasato*, 274 A.D.2d 771, 773 (3d Dep't 2000).

Under New York law, to be actionable as slander *per se*, statements need not consist of the technical words of an indictment—they need only be "reasonably

14

susceptible to a connotation of criminality." *Jewell*, 23 F.Supp.2d at 399; *Lucking v. Maier*, 2003 WL 23018787, at *5 (S.D.N.Y. Dec. 23, 2003). The relevant inquiry focuses on what impression the challenged material leaves on the reasonable reader. *Lucking*, 2003 WL 23018787, at *5 (citing *Jewell*, 23 F.Supp.2d at 399). Here, Defendants told readers Palin was guilty of "inciting" Loughner to "open fire" at a "Congress on Your Corner" event hosted by Congressperson Giffords for her constituents in Tucson, murdering a nine-year-old girl, federal judge, and several others, and severely wounding thirteen, including Representative Giffords. Loughner was charged with Assassination of a Member of Congress (18 U.S.C. 351(c)); Attempting Murder of a federal employee (18 U.S.C. 1114); use of a firearm in relation to a crime of violence (18 U.S.C. 924(c)(1)(A)); Murder of a federal employee (18 U.S.C. 1114); causing a death through the use of a firearm (18 U.S.C. 924(j)(1)); causing the death of participants in a federally provided activity (18 U.S.C. 245(b)(1)(B)); and injuring participants in a federally provided activity (18 U.S.C. 245(b)(1)(B)). *See, U.S. v. Loughner*, 2011 WL 754416 (D. Ariz. Mar. 3, 2011) (Superseding Indictment). Defendants' assertions that Governor Palin "clearly" and "directly" "incited" Loughner to commit these crimes do, indeed, charge her with committing an indictable offense: criminal conduct in violation of 18 U.S.C. § 373. Numerous cases recognize "incitement" as a crime. *See e.g., Bradenburg v. Ohio*, 395 U.S. 444, 447 (1969); *State v. Brahy*, 22 Ariz.App. 524,

525, 529 P.2d 236, 237 (1974); *U.S. v. Korab*, 893 F.2d 212, 214 (9th Cir. 1989); *U.S. v. White*, 698 F.3d 1005, 1016 (7th Cir. 2012).[15]

### C. The District Court Abused its Discretion in Excluding Significant Evidence of Actual Malice

The District Court's exclusion of evidence concerning Bennet's brother and articles published while Bennet was Editor of *The Atlantic* was indeed a clear abuse of discretion and clearly prejudicial to the outcome of the trial. *Village of Freeport v. Barrella*, 814 F.3d 594, 610-611 (2d Cir. 2016). An "abuse of discretion" occurs where the court "based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence or rendered a decision that cannot be located within the range of permissible decisions." *Id*. Errors are prejudicial to the outcome of the trial where "the jury's judgment would be swayed in a material fashion by the error." *Restivo v. Hessemann*, 846 F.3d 547, 573 (2d Cir. 2017) (citing *Arilo v. Lively*, 474 F.3d 46, 51 (2d Cir. 2007)).

As recognized by the Supreme Court and Second Circuit, the law's imposition of the "heavy"[16] burden to prove actual malice by clear and convincing evidence does not allow the exclusion of evidence that tends to show Bennet actually knew of the falsity of what he was saying (i.e., having read or known about the conclusions

---

[15] In *Darby v. New York Times Co.*, 2014 WL 818614 (Tex. Feb. 26, 2014), an article describing the plaintiff as encouraging a criminal plot was held to convey to a "reasonable person" that criminal conduct was attributable to the plaintiff.
[16] *Dunlop-McCullen v. Rogers*, 2002 WL 1205029, at *7 (S.D.N.Y. Feb. 21, 2002).

in *The Atlantic* articles and received an article discussing the absence of any link).

*Herbert v. Lando*, 441 U.S. 153, 164 (1979); *Celle,* 209 F.3d at 183; *Goldwater v. Ginzburg*, 414 F.2d 324 (2d Cir. 1969).   It is well-established that defamation plaintiffs are entitled to use an "accumulation of [circumstantial] evidence and appropriate inferences" to prove actual malice (whether through actual knowledge or recklessness).  *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 927 (2d Cir. 1987)).

Palin had a right to prove her case through a totality of circumstantial evidence of actual malice and was entitled to present any circumstantial evidence tending to show the Defendants were aware that what they published was untrue.  *Dalbec*, 828 F.2d at 927; *Herbert,* 441 at 160.  "As a general rule, <u>any competent evidence</u>, either direct or circumstantial, can be resorted to…"  *Herbert*, 441 U.S. at 164, n. 12 (emphasis added).  The range of evidence available to a plaintiff to prove actual malice is not narrow - "quite the opposite" is true.  *Id.* at 168.  Plaintiffs saddled with the burden of proving subjective intent by clear and convincing evidence are entitled to present evidence of "all of the relevant circumstances."  *Celle*, 209 F.3d at 183; *Goldwater*, 414 F.2d at 324.

Plaintiffs can present any evidence to "permit the conclusion" that the defendant was aware of falsity.  *Sharon v. Time, Inc.*, 599 F.Supp. 538, 564 (S.D.N.Y. 1984).  Thus, any evidence indicating that Bennet may have read and

17

received articles at *The Atlantic* at the time of Loughner's shooting (articles that concluded there was no link to incitement or Palin) is precisely the type of "competent evidence" that could "permit the conclusion" Bennet knew the truth; particularly given the prominence of that event and Bennet's focus on rhetoric and gun control. *Palin*, 940 F.3d at 813-815.

There may not be more compelling circumstantial evidence of awareness of falsity than proof that the Defendant read, received, and/or was aware of articles confirming the falsity of the challenged statements, including articles published on the website of the media company of which the Defendant was editor-in-chief.[17] These same articles demonstrate the well-publicized consensus within the journalism community that the challenged statements are false, including publications at which Bennet worked as a journalist, served as editor-in-chief, and admittedly consumed their content. The articles published on The Atlantic website are highly probative and compelling proof of actual knowledge of falsity, and it was clear error to exclude them.

---

[17] That Bennet may not have had "editorial control" over the articles in question goes to the weight of *The Atlantic* evidence, not its admissibility. The possibility that Bennet read or knew about these articles is what gives rise to the inference that he was aware of what they said—namely, the absence of the link—not whether he actively edited them.

Defendants claim Bennet's inability to recall reading these articles[18] and the fact that some of them were authored by sister publications (but nevertheless on *The Atlantic's* website) makes them irrelevant, but Palin laid a more than adequate foundation to admit the excluded *The Atlantic* articles. Appellant was not required to conclusively establish that Bennet read and remembered each of *The Atlantic* website articles and chose to purposely disregard them at the time of writing the Editorial because Bennet admitted regularly reading (indeed, "consuming") *The Atlantic's* website (including its integrated blogs) [JA700-704 at 616:3-620:16; JA705 at 621:7-9] and "must have read" some of the articles about the shooting, which was a "big story" [JA704 at 620:17-19], and had a particular interest in political rhetoric and gun control, even moderating a gun control event hosted by *The Atlantic* at which Gabrielle Giffords spoke. [JA710 at 626:5-25] This evidence laid a more than adequate foundation to admit the evidence this Court determined to be relevant in the Mandate. *Palin*, 940 F.3d at 813-814.

The exclusion of these articles deprived Palin the opportunity to present critical evidence to the jury to help demonstrate not only actual knowledge of falsity, but also recklessness. These articles were evidence of Bennet's "opportunity to know the journalistic consensus that the connection was lacking" and tended to show

---

[18] The believability of Bennet's claim that he doesn't recall reading these articles should have been an issue for the jury to decide.

"Bennet was recklessly disregarding the truth when he published the editorial *without reacquainting himself* with the contrary articles published in The Atlantic six years earlier."  *Palin*, 940 F.3d at 814; *see also Goldwater*, 414 F.2d at 343 ("failure to discover" is relevant and admissible to help show actual malice).

Given the importance of Bennet's memory, knowledge, and intent to this case, his credibility was also of paramount importance.  His supposed lack of knowledge of and inability to recall *The Atlantic* articles and consensus they reached was also clearly relevant and admissible in that regard.  *U.S. v. Chichakli*, 2014 WL 5369424, at *17 (S.D.N.Y. Oct. 16, 2014); *Palin*, 940 F.3d at 813-815.

Defendants' argument that all evidence concerning Senator Bennet was properly excluded fails for the same reasons.  As explained above, the exclusion of this evidence deprived Palin of her right to present relevant, material evidence she is legally entitled to use to prove her claim.  *Dalbec*, 828 F.2d at 927.

Indeed, evidence concerning Bennet's relationship with his brother is a compelling component of bias and ill-will, which Palin was entitled to present to meet her burden of proof.  *Celle*, 209 F.3d at 190; *Harte-Hanks*, 491 U.S. at 664 (publication motivated by political interests); *Campbell v. Citizens for an Honest Government, Inc.*, 255 F.3d 560 (8th Cir. 2001); *Chichakli*, 2014 WL 5369424, at *17.  Evidence of ill will, hatred, and bias is entirely appropriate on the actual malice issue and relevant and admissible to establish reckless disregard of falsity or "high

20

degree of awareness of probable falsity." *Kipper v. NYP Holdings Co., Inc.*, 12 N.Y.3d 348 (2009); *Harris v. City of Seattle*, 152 Fed. Appx. 565 (9th Cir. 2005).

The admissibility of such evidence merely reflects the common-sense evidentiary notion that someone blinded with hatred or animus toward a person is more likely to fabricate false stories or ignore the truth, or spread statements couched as if the speaker knows them to be true when in fact the speaker subjectively knows that they do not know whether they are true. Thus, "[a]lthough motive alone cannot suffice to prove actual malice, it is a *highly relevant* consideration." *Sindi v. El-Moslimany*, 896 F.3d 1, 16 (1st Cir. 2018); *Church of Scientology v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001); *Church of Scientology Intern. v. Time Warner, Inc.*, 903 F.Supp. 637, 641 (S.D.N.Y. 1995).

## III.   THE JURY'S VERDICT SHOULD NOT BE AFFIRMED

### A.   The *Voir Dire* was Legally Insufficient and Failed to Ensure an Impartial Jury

The *voir dire* in this case was legally insufficient and calls for reversal because it was so demonstrably brief and lacking in substance that it afforded counsel too little information to draw any conclusions about potential jurors' general outlook, experience, communication skills, intelligence, and lifestyle and failed to sufficiently inquire about systemic or pervasive bias. *U.S. v. Lawes*, 292 F.3d 123, 129 (2d Cir. 2002).

Defendants argue jury selection was sufficient because the District Court warned the jury to "put aside any views they may have," [Def. Br. at p. 50], but if telling jurors that they have to be impartial was legally sufficient there would be no need for jury selection at all. The court's duty was to "conduct a ***thorough*** jury selection process that allows the judge to evaluate whether each prospective juror is '***to be believed when he says he has not formed an opinion about the case***.'" U.S. v. *Tsarnev,* 142 S. Ct. 1024, 1034 (2022) (emphasis added). Here, the District Court made ***no effort*** to determine whether prospective jurors' claimed ability to be impartial could be believed, and also failed to meaningful explore of their exposure to the facts of the case given its extensive media coverage. *Id.* at 1035-36; *U.S. v. Kahaner*, 204 F.Supp. 921, 924 (S.D.N.Y. 1962) ("naïve not to recognize…that the publicity surrounding the case…underscores the court's duty to question jurors on *voir dire* with painstaking care to assure…an impartial jury and a fair trial.").

Warnings against bias or prejudice are not a substitute for exploring whether bias or prejudice exists. The jury selection process here simply was not legally sufficient and is therefore grounds for reversal.

## B.    The Mid-Deliberation Instruction Was Erroneous

The Mid-Deliberation instruction does indeed require a new trial because it contradicted the law, told jurors to disregard legally sufficient evidence of actual malice, and effectively told them to find in Defendants' favor. *U.S. v. Kozeny*, 667

F.3d 122, 130 (2d Cir. 2011); *Owen v. Thermatool Corp.*, 155 F.3d 137, 139 (2d Cir. 1998) (instruction is erroneous if it "misleads the jury as to the proper legal standard, or it does not adequately inform the jury of the law"); *Girden v. Sandals Intern.*, 262 F.3d 195, 204-205 (2d Cir. 2001) (instructions cannot effectively instruct the jury to find a certain way or accept certain evidence). It is well-established that defamation plaintiffs are entitled to use an "accumulation of [circumstantial] evidence and appropriate inferences" to prove actual malice (whether through actual knowledge or recklessness) and prove their case through a totality of circumstantial evidence of actual malice. Thus, Palin was entitled to present any circumstantial evidence tending to show the Defendants were aware that what they published was untrue. *Dalbec*, 828 F.2d at 927; *Herbert,* 441 at 160.

Telling the jury that "an inference from a statement by Mr. Bennet is not itself sufficient to carry the clear and convincing burden…" [JA1217 at 1311:18-23] misled the jury as to the proper legal standard and misstated the law about a ***potentially dispositive issue*** at a critical juncture ***during their deliberations***. *Girden*, 262 F.3d at 205 (citing *Delima v. Trinidad Corp.*, 302 F.2d 585, 587 (2d Cir. 1962); *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 525 (2d Cir. 1998)); *Restivo*, 846 F.3d at 572. Instructions containing errors that are so serious and flagrant that they threaten the integrity of the trial or deprive the jury of legal guidance in making a decision are fundamental error. *Innomed Labs, LLC v. ALZA Corp.*, 368 F.3d 148,

162 (2d Cir. 2004) (citing *Shade v. Hous. Auth. of New Haven*, 251 F.3d 307, 313 (2d Cir. 2001)).

Defendants' arguments, like District Court's erroneous instruction, improperly focus only on the "negative inference" issue associated with the *Contemporary Mission* standard [Def. Br. at p. 52], which incorrectly assumes the jury's question involved "disbelieving" something Bennet said. Drawing an inference[19] from testimony is something entirely different than deciding not to believe something Bennet said on the stand.

Defendants' contention that the pre-deliberation instructions somehow cure the mid-deliberation instruction [Def. Br. at 53] ignores (among other things) the reality that a specific instruction provided in response to a jury question during deliberations carries far more weight than standard pre-deliberation instructions. Moreover, if the pre-deliberation instructions were (as defendants' claim) "clearly and carefully instructed the jury on how to evaluate evidence," then the jury never would have asked their mid-deliberation question leading to the erroneous instruction.

---

[19] Defendants' waiver argument involving the supposed "opportunities to ask the jurors about the inference at issue," is a red herring because it would have been legally improper and grounds for reversal to have asked the jurors about the substance of their deliberations. Fed. R. Evid. 606(b); *Bibbins v. Dalsheim,* 21 F.3d 13, 17 (2d Cir. 1994).

### C. Numerous Other Grounds Also Required Reversal

Defendants gloss over the other grounds Palin identified that require reversal [Def. Br. p. 54]. The only issue Defendants attempt to address is the jury's exposure to push notifications about the District Court's Rule 50 decision, after it was needlessly and improperly[20] announced during jury deliberations and became the subject of immediate news coverage revealing the decision in headlines to which jurors were exposed. [Palin Br. at 18, 22-23] Learning the presiding judge determined a case has no merit is the type of extraneous information that would affect a typical juror. *Bibbins*, 21 F.3d at 17.

## IV. DISQUALIFICATION IS NECESSARY AND APPROPRIATE

Defendants argue Palin fails to sufficiently demonstrate that the District Court abused its discretion in denying her motion for disqualification but the facts demonstrate otherwise.

As noted in Palin's Brief, Section 455(a) "deals exclusively with appearances" and its "purpose is the protection of the public's confidence in the impartiality of the judiciary." *U.S. v. Amico*, 486 F.3d 764, 775 (2d Cir. 2007). Here, the totality of

---

[20] In *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 405 (2006), the Supreme Court recognized that "while a district judge is permitted to enter judgment as a matter of law when it concludes that the evidence is legally insufficient, it is not required to do so." ***To the contrary, the district courts are, if anything, encouraged to submit the case to the jury, rather than granting such motions.***" *Id*. (emphasis added)

the circumstances (including the history of this case, the decisions made throughout, the judge's refusal to follow the Mandate, circumstances surrounding the exit interview of the jurors and the comments to the press *before* informing counsel, as well as the made statements defending the decision to announce the Rule 50 ruling during deliberations and the impact of the push notifications), an objective, disinterested observer fully informed of the events would entertain doubts about the District Judge's impartiality**.  **Moreover**,** where the question of recusal is a close call, a court should recuse itself.  *U.S. v. Amico*, 486 F.3d 764, 775 (2d Cir. 2007); *Lamborn v. Dittmer*, 726 F.Supp. 510, 518 (S.D.N.Y. 1989); *U.S. v. Ferguson*, 550 F.Supp. 1256, 1259-60 (S.D.N.Y. 1982).

Defendants argue the District Judge's comments to the press were insufficient to independently require disqualification because they were not "on the merits" of the case, but this ignores the substance of the comments and the fact that they did not discuss purely procedural matters and can reasonably be construed as an attempt to bolster the Court's rulings.  *In re Boston's Children First*, 244 F.3d 164, 170 (1st Cir. 2001) (under some circumstances judge's defense of own orders, prior to resolution of appeal, may create appearance of partiality); *U.S. v. Microsoft*, 253 F.3d 34, 112 (D.C. Cir. 2001) ("[i]t is no excuse that the judge may have intended to 'educate' the public about the case or to 'rebut misconceptions' purportedly caused by the parties").  Moreover, "[b]ecause there is no scienter requirement in

section 455, the test is not how a judge intended his remarks to be understood, but whether, as a result of the interviews or extra-judicial statements, the appearance of impartiality might reasonably be questioned." *Ligon v. City of New York*, 736 F.3d 118, 126-127 (2d Cir. 2013). Accordingly, disqualification was necessary and appropriate.

## **<u>CONCLUSION</u>**

For the foregoing reasons, and those stated in her Initial Brief, Plaintiff-Appellant respectfully requests that the Court reverse and vacate the District Court's Final Judgment dismissing her defamation claim, the February 14, 2022 oral and March 1, 2022 written rulings granting judgment as a matter of law under *Fed. R. Civ. P.* 50; the February 15, 2022 Verdict, the August 28, 2020 Opinion and Order (denying summary judgment); the December 29, 2020 Memorandum Order, and the May 31, 2022 Opinion and Order.; and grant Appellant a new trial.

Date: January 13, 2023.           Respectfully Submitted,

*/s/ Shane B. Vogt*
Kenneth G. Turkel (Co-Lead Counsel)
kturkel@tcb-law.com
Shane B. Vogt (Co-Lead Counsel)
svogt@tcb-law.com
TURKEL CUVA BARRIOS, P.A.
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Tel:  (813) 834-9191
Fax: (813) 443-2193

*Attorneys for Plaintiff-Appellant Sarah Palin*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief or other document complies with type-volume limits of Fed. R. App. P. R. 32 and Local Rule 32.1 because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    [X]    this brief or other document contains 6,598 words
    [ ]    this brief uses monospaced type and contains [state number of] lines

This brief or other document complies with the typeface and type style requirements because:

    [X]    this brief or other document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font; or
    [ ]    this brief or other document has been prepared in a monospaced typeface using [identify word processing program] in [identify font size and type style].

  */s/ Shane B. Vogt*
Shane B. Vogt

*Attorney for Plaintiff-Appellant Sarah Palin*

Dated: January 13, 2023.

## **CERTIFICATE OF SERVICE**

I certify that on January 13, 2023, the foregoing document was served on all parties or their counsel of record through the CM/ECF system, which will send notification to the following:

David L. Axelrod
axelrodd@ballardspahr.com
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599

Thomas B. Sullivan
sullivant@ballardspahr.com
Jacquelyn N. Schell
schellj@ballardspahr.com
Ballard Spahr LLP
1675 Broadway, 19th Floor
New York, NY 10019

*Counsel for Defendant-Appellee The New York Times Company*

Dated: January 13, 2023.  By: *Shane B. Vogt*
                                Shane B. Vogt